IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TEXT MESSAGING ANTITRUST LITIGATION | ) Case No. 08 C 7082 ) MDL No. 1997 |
| ------------------------------------------------------------ | ) |
| THIS ORDER APPLIES TO: ALL ACTIONS | ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On December 12, 2009, the Court granted defendants' motion to dismiss plaintiffs' first amended complaint and gave plaintiffs until January 8, 2010 to file an amended complaint that included a viable claim for relief. *In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2009 WL 5066652 (N.D. Ill. Dec. 10, 2009). Plaintiffs have moved to amend their complaint. For the reasons stated below, the Court grants the motion.

### Discussion

Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. Proc. 15(a)(2). The Supreme Court has held that leave to amend should be "freely given" unless there is good reason to deny the motion, such as undue delay, bad faith, futility of the amendment, or repeated failure to cure deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendants argue that leave to amend should be denied as futile because the proposed second amended complaint fails to state a claim.

**1.     The dismissal of plaintiffs' first amended complaint**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence" of defendants' liability. *Id.* at 556.

In its December 10 decision, the Court ruled that to state a claim in the antitrust conspiracy context:

> (1) a plaintiff must allege a "plausible" conspiracy to fix prices; (2) an allegation of conspiracy that rests on conduct "merely consistent with" an agreement does not rise to the level of plausibility; and (3) allegations of conspiracy that do not rise to the level of plausibility do not give rise to a reasonable inference of a conspiracy that a court must draw in the plaintiff's favor.

*In re Text Messaging*, 2009 WL 5066652, at *5.

The Court concluded that plaintiffs' first amended complaint did not meet this plausibility standard. *Id*. at *5-10. The Court determined that the first amended complaint did not include "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at *5 (citing *Twombly*, 550 U.S. at 553-54). In the first amended complaint, plaintiffs alleged that defendants engaged in parallel pricing, had the opportunity to collude through an industry group, the CTIA, and failed to deny a price-fixing conspiracy when responding to Congressional inquires into the matter. They further alleged that the structure of the text messaging market was prone to collusion and that price increases were "historically unprecedented," contrary to common economic experience, and against defendants' interest. These factors taken together, plaintiffs argued, supported an inference that defendants must have agreed to

collude on prices.

The Court disagreed. The Court noted (incorrectly, as it turns out) that the first amended complaint did not squarely allege that the defendants had entered into an actual agreement. The Court also noted that defendants had not identified any specific times, places, or person involved in the conspiracy. *Id*. at *6. The latter factor defeated any argument that the plaintiffs had alleged sufficient facts to support a claim that defendants expressly agreed to fix prices. *Id.*

Because *Twombly* allows for the possibility of tacit agreements, the Court also evaluated the first amended complaint to determine whether it alleged facts sufficient to support an inference of a tacit agreement. Plaintiffs alleged that the defendants had the opportunity to collude through the CTIA and the Wireless Internet Caucus (WIC) leadership council. They did not, however, offer any specifics about the parties, purpose, or approximate dates of a plausible conspiracy; details about the structure and content of the meetings or the type of employees who attended them; statements by any defendant suggesting the presence of an agreement; or indication of the terms of the alleged agreement. *Id.* Such factors would have supported an inference of conspiracy. The Court concluded that the facts as alleged reflected, at most, an opportunity to conspire. This, without more, was insufficient to sustain an inference that there was a tacit conspiracy to fix prices. *Id*. at *7 (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1242 n.15 (3d Cir. 1993)).

Plaintiffs also alleged that the market for text messaging services behaved in a noncompetitive manner, defendants acted against their interests by falling to compete

on the price of individual text messages, and collusion could be inferred from the defendants' failure to deny a price-fixing scheme in their response to Congressional inquiries into text messaging prices. The Court found that these allegations, together with plaintiffs' other allegations, "[did] not give rise to more than the 'mere possibility' of an agreement, which is insufficient to state a claim for conspiracy under the Sherman Act." *Id.* at *11 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).

### 2.  Proposed second amended complaint

Plaintiffs have moved to amend their complaint. Their proposed second amended complaint includes an allegation that in 2005-06, the defendants "agreed to uniformly charge an unprecedented common per-unit price of ten cents for text messaging services." Proposed 2d Am. Compl. ¶ 80. Fairly read, this is an allegation of an express agreement. The Court confesses that it mistakenly did not see things that way when it reviewed the prior version of the complaint, which included a similar allegation. That said, the Court has not wavered from its view that the earlier version of the complaint was insufficient to state a claim of conspiracy to fix prices. The bare allegation of an agreement was, as noted earlier, unsupported by particulars, and the thrust of plaintiffs' argument in response to the earlier motion to dismiss was that there was a tacit agreement involving parallel conduct, not an express agreement.

The proposed second amended complaint, however, provides additional support for the claim of an express agreement that carries plaintiffs over the plausibility threshold. This support includes the following allegations:

- An allegation that defendants expressly agreed to adopt a uniform per-unit price of text messaging services. Proposed 2d Am. Compl. ¶ 5.

- An allegation that the WIC, a division of the CTIA industry trade group, formed committees of defendants' high-level executives that conducted meetings "narrowly focused on text messaging delivery *and pricing*." *Id.* ¶ 11 (emphasis added).

- An allegation that the expressed purpose of the WIC Leadership Council was to engage in "co-oopetition" (sic) that would allow the purported competitors to "profit[ ] together by placing the interests of the industry above and before the individual companies' individual interests." *Id.* ¶ 12.

- Identification (by name) of several leaders from the defendant companies who participated in the WIC leadership council during the period when the alleged conspiracy was devised and carried out, and dates on which meetings of the council occurred. *Id.* ¶¶ 103, 104.

- An allegation that the WIC leadership council meetings were used to, among other things, disseminate detailed information regarding text messaging pricing. *Id.* ¶ 107.

Critical among plaintiffs' additions to the complaint are the allegations that the defendants exchanged pricing information at meetings of an industry group whose express purpose was to favor the group as a whole over its individual members, as well as the allegations identifying the participants in the meetings and the dates (or approximate dates) of the meetings. The Court does not adjudicate the truth of those allegations at this juncture of the case; rather, it takes them as true and evaluates their sufficiency to sustain plaintiffs' claim. *See, e.g., Tamburo v. Dworkin*, — F.3d —, 2010 WL 1387288, at *3 (7th Cir. Apr. 8, 2010) ("[A] complaint alleging an antitrust claim must contain 'enough factual matter (taken as true) to suggest that an agreement was made.") (quoting *Twombly*, 550 U.S. at 556); *London v. RBS Citizens, N.A.*, — F.3d —, 2010 WL 1235843, at *2 (7th Cir. Apr. 1, 2010) (a court reviewing a motion to dismiss "tak[es] the factual allegations pleaded by the plaintiffs as true and draw[s] all reasonable inferences in their favor"); *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th

Cir. 2009) (same).

Defendants argue that the new allegations in the proposed second amended complaint add nothing of consequence. The Court disagrees. Plaintiffs have alleged specifics about the time, place, and attendees of the CTIA and WIC meetings, and they have expressly alleged that defendants agreed in at least some of these meetings to raise prices by a certain amount within a certain time frame. These new factual allegations add specificity and detail that lends plausibility to plaintiffs' claim of a conspiracy to fix prices.[1]

Plaintiffs' new allegations, of course, do not stand alone. Rather, they must be read in conjunction with plaintiffs' other allegations, including those that were in the previous version of the complaint. Plaintiffs have also clarified that they contend that prior to the conspiracy, defendants were not charging a common price – contrary to what the Court assumed from their earlier complaint. *See In re Text Messaging*, 2010 WL 5066652, at *8. Plaintiffs have also reasserted their earlier allegations that defendants made parallel price increases for individual text messages following CTIA / WIC meetings. Those allegations were, the Court ruled, insufficient in the context of the prior version of the complaint. But when viewed in light of plaintiffs' new allegations providing further detail about the nature of the alleged conspiratorial meetings and their participants, as well as the contention that the defendants exchanged pricing

---

[1] The Court also notes, though it is not crucial to the decision, that plaintiffs have alleged in their second amended complaint that the WIC leadership council stopped tracking company-by-company text messaging revenues immediately after this suit was filed. This allegation, considered together with plaintiffs' other allegations detailed here and in the Court's prior decision, further supports the claim of conspiracy.

information at those meetings, the Court now concludes that plaintiffs have alleged enough to take their conspiracy claim out of the realm of the conclusory or merely possible and carry it into the realm of the plausible. Plaintiffs no longer allege "[no]thing other than 'merely parallel conduct that could just as well be independent action,'" *id.* at *11 (quoting *Twombly*, 550 U.S. at 558). Rather, they have now sufficiently alleged an actionable agreement among the defendants to fix prices.

Defendants correctly point out that plaintiffs' allegations regarding the content of the meetings are not documented by any of the evidence they cite in their complaint or in their motion to amend. That, however, is not necessary. Neither *Twombly* nor *Iqbal* requires a plaintiff to prove his case in the complaint, nor do they impose a summary judgment-like standard to be applied at the pleading stage. Indeed, though these cases require a plaintiff's claims to be plausible, they "do[ ] not impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556. An otherwise "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.*[2]

## Conclusion

For the reasons stated above, the Court grants plaintiffs' motion for leave to amend [docket no. 131]. The case is set for a status hearing on May 18, 2010, at 9:30

---

[2] Defendants argue that the presence at CTIA / WIC meetings of persons other than representatives of the defendants defeats any claim that a conspiracy could have been hatched or carried out during those meetings. Accepting this argument would require the Court to find facts against the plaintiffs and contrary to their allegations, which is inappropriate on a motion to dismiss for failure to state a claim, even in the post-*Twombly* and *Iqbal* environment.

a.m., to discuss discovery parameters and scheduling.

>                                     _____
>                                        MATTHEW F. KENNELLY
>                                        United States District Judge

Date: April 30, 2010