# EXHIBIT B

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-8037

IN RE:

TEXT MESSAGING ANTITRUST LITIGATION.

APPEAL OF:

VERIZON WIRELESS, *et al.*,

*Defendants.*

Petition for Interlocutory Appeal from the
United States District Court for the
Northern District of Illinois, Eastern Division.
MDL No. 1997, Case No. 08 C 7082—**Matthew F. Kennelly**, *Judge.*

SUBMITTED DECEMBER 2, 2010—DECIDED DECEMBER 29, 2010

Before POSNER, WOOD, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. A class action suit that has been consolidated for pretrial proceedings in the district court in Chicago charges the defendants with conspiring to fix prices of text messaging services in violation of federal antitrust law. The district court allowed the plaintiffs to file a second amended complaint despite the defendants' objection, based on *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that the second complaint like the first failed to state a claim. The defendants asked the district judge to certify, for interlocutory appeal under 28 U.S.C. § 1292(b), the question of the complaint's adequacy. The judge agreed. He said: "Though (as plaintiffs argue) the Seventh Circuit had issued dozens of decisions concerning the application of *Twombly*, the contours of the Supreme Court's ruling, and particularly its application in the present context, remain unclear. The Court believes this is a subject on which reasonable minds could differ. The question presented is controlling, because there is at least a decent chance (though it is by no means certain) that were a court to rule the second amended complaint deficient, the case would be over. Finally, there is a good chance that immediate review may materially advance the ultimate conclusion of the case."

Section 1292(b) requires our permission to appeal as well as the district court's. The defendants have asked our permission and the plaintiffs urge us to turn them down. They argue that the proposed appeal does not present a "controlling question of law," as the statute requires. The question presented is whether the second amended complaint states a claim under the standard for pleading set forth in *Twombly*. It is a *controlling* question, because if the second amended complaint does not state a claim, the case is likely (though, as the district judge said, not certain) to be over; the plaintiffs are unlikely without discovery to be able to allege additional facts that would persuade the district court to allow them to file a third amended complaint if we held that the second should have been dismissed.

No. 10-8037 3

But is it a controlling question *of law*? It is not an abstract legal question such as whether the Sherman Act forbids price fixing; it is a question whether a particular complaint satisfies the pleading standard of *Twombly*. Yet the question's narrowness should not disqualify it, at least in the rather special circumstances presented by the appeal. Suppose the defendants had been overheard to say to each other "let's fix our ice machines," and the controlling question in the case was whether "ice machines" was a euphemism for prices of text messaging services. That would be a question of fact—and it would be pointless to allow an interlocutory appeal from its resolution. Disputed facts are resolved at trial—by the verdict if it's a jury trial and if it's a bench trial by the judge's findings of fact—and thus resolution comes at the end of the trial, which ordinarily is too late for an *interlocutory* appeal. Though there are cases in which a protracted hearing on relief follows the determination of liability, one can understand why Congress didn't think it necessary to authorize interlocutory appeals to decide whether a finding of fact by a district court was clearly erroneous.

The interlocutory appeal that we are asked to authorize in this case does not seek to overturn any findings of fact. The defendants are arguing rather that even if all the factual allegations of the complaint are true, the complaint is insufficiently plausible to satisfy *Twombly*. They are asking us to apply a legal standard— the pleading standard set forth in *Twombly*—to a set of factual allegations taken as true for purposes of the appeal.

A challenge to a trial court's application of a legal standard to a set of facts is often described as presenting a "mixed question of fact and law" or an "ultimate question of fact," but these are not helpful labels. The appellate court's task in such a case is to determine the legal significance of a set of facts. In *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n. 19 (1982), the Supreme Court left open the question whether appellate review of such a determination should be deferential, just as it is when reviewing findings of fact, but the rule in our court is that it should be. The main task of an appellate court, which is to maintain the coherence, uniformity, and predictability of the law, is not engaged by review of the application of a legal standard to a unique, non-recurring set of particular facts. *Wellpoint, Inc. v. Commissioner*, 599 F.3d 641, 644 (7th Cir. 2010); *Barber v. Rose*, 7 F.3d 636, 642-43 (7th Cir. 1993); *Mucha v. King*, 792 F.3d 602, 605-06 (7th Cir. 1986). No matter; in this case we have neither factfindings nor the application of a legal standard to factfindings; the question presented by the appeal is the sufficiency of the allegations of a complaint; and, most important, that question requires the interpretation, and not merely the application, of a legal standard—that of *Twombly*.

Furthermore, when the question presented by an appeal is whether *Twombly* requires dismissal of a complaint, the concerns underlying that decision argue for empowering the district court and the court of appeals to authorize an interlocutory appeal. *Twombly*, even more clearly than its successor, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), is designed to spare defendants the expense

No. 10-8037 5

of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit to warrant putting the defendant to the burden of responding to at least a limited discovery demand. When a district court by misapplying the *Twombly* standard allows a complex case of extremely dubious merit to proceed, it bids fair to immerse the parties in the discovery swamp—"that Serbonian bog . . . where armies whole have sunk" (*Paradise Lost* ix 592-94)—and by doing so create irrevocable as well as unjustifiable harm to the defendant that only an immediate appeal can avert. Such appeals should not be routine, and won't be, because as we said both district court and court of appeals must agree to allow an appeal under section 1292(b); but they should not be precluded altogether by a narrow interpretation of "question of law."

Now it is true that we ruled in *Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000), that the term "question of law" in section 1292(b) refers "to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." We pointed out that "to decide whether summary judgment was properly granted requires hunting through the record compiled in the summary judgment proceeding to see whether there may be a genuine issue of material fact lurking there; and to decide a question of contract interpretation may require immersion in what may be a long, detailed,

and obscure contract," whereas "if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Id*. at 677; see also *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1007 (7th Cir. 2002); *In re Hamilton*, 122 F.3d 13 (7th Cir. 1997); *Malbrough v. Crown Equipment Corp.*, 392 F.3d 135, 136 (5th Cir. 2004); *Foster Wheeler Energy Corp. v. Metropolitan Knox Solid Waste Authority, Inc.*, 970 F.2d 199, 202 (6th Cir. 1992); *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991). As we read in *Malbrough v. Crown Equipment Corp., supra*, 392 F.3d at 136, "the underlying issue of whether [the plaintiff] has presented sufficient evidence to show a 'genuine issue . . . [of] material fact', and thus avoid summary judgment . . ., is not a question of law within the meaning of § 1292(b)."

But in this case there is no question of hunting through a record or immersing ourselves in a complicated contract, and moreover we *do* have a question of the meaning of a common law doctrine—namely the federal common law doctrine of pleading in complex cases, announced in *Twombly*. Decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous. See *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010); *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 615-16 (7th Cir. 2009); *Florence v. Board of Chosen*, 621 F.3d 296, 301 (3d Cir. 2010); *Weintraub v. Board of Educ. of City School Dist.*, 593 F.3d 196, 200-01 (2d Cir.

No. 10-8037 7

2010); *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783-84 (8th Cir. 1998); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 720-21 (11th Cir. 1987).

Not that routine applications of well-settled legal standards to facts alleged in a complaint are appropriate for interlocutory appeal. But *Twombly* is a recent decision, and its scope unsettled (especially in light of its successor, *Iqbal*—from which the author of the majority opinion in *Twombly* dissented; and two of the Justices who participated in those cases have since retired). This court has only twice discussed the application of *Twombly* to antitrust violations, and in both cases only in passing. *Tamburo v. Dworkin*, 601 F.3d 693, 699-700 (7th Cir. 2010); *Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 595, 596 (7th Cir. 2008). Pleading standards in federal litigation are in ferment after *Twombly* and *Iqbal*, and therefore an appeal seeking a clarifying decision that might head off protracted litigation is within the scope of section 1292(b). Cf. *Boim v. Quranic Literacy Institute, supra*, 291 F.3d at 1007. The previous cases do not address the relation of *Twombly* to the standards for interlocutory appeals under that section, and that is a further novelty that justifies the conclusion that the appeal presents a genuine question of law.

So we grant the application for interlocutory appeal, and, since the merits of the appeal have been fully briefed in the parties' submissions and would not, we think, be illuminated by oral argument, we proceed to the merits.

8                                                         No. 10-8037

    The complaint in *Twombly* alleged that the regional telephone companies that were the successors to the Bell Operating Companies which AT&T had been forced to divest in settlement of the government's antitrust suit against it were engaged in "parallel behavior." Bluntly, they were not competing. But section 1 of the Sherman Act, under which the suit had been brought, does not require sellers to compete; it just forbids their agreeing or conspiring not to compete. So as the Court pointed out, a complaint that merely alleges parallel behavior alleges facts that are equally consistent with an inference that the defendants are conspiring and an inference that the conditions of their market have enabled them to avoid competing without having to agree not to compete. The core allegations of the complaint in *Twombly* were simply that "In the absence of any meaningful competition between the [defendants] in one another's markets, and in light of the parallel course of conduct that each engaged in to prevent competition from [other carriers] within their respective local telephone and/or high speed internet services markets and the other facts and market circumstances alleged above, Plaintiffs allege upon information and belief that [the defendants] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another." *Id*. at 551.

    Our defendants contend that in this case too the complaint alleges merely that they are not competing. But

we agree with the district judge that the complaint alleges a conspiracy with sufficient plausibility to satisfy the pleading standard of *Twombly*. It is true as the defendants contend that the differences between the first amended complaint, which the judge dismissed, and the second, which he refused to dismiss, are slight; but if his refusal to dismiss the second complaint is properly described as a reconsideration of his ruling on the first, so what? Judges are permitted to reconsider their rulings in the course of a litigation.

The second amended complaint alleges a mixture of parallel behaviors, details of industry structure, and industry practices, that facilitate collusion. There is nothing incongruous about such a mixture. If parties agree to fix prices, one expects that as a result they will not compete in price—that's the purpose of price fixing. Parallel behavior of a sort anomalous in a competitive market is thus a symptom of price fixing, though standing alone it is not proof of it; and an industry structure that facilitates collusion constitutes supporting evidence of collusion. An accusation that the thousands of children who set up makeshift lemonade stands all over the country on hot summer days were fixing prices would be laughed out of court because the retail sale of lemonade from lemonade stands constitutes so dispersed and heterogeneous and uncommercial a market as to make a nationwide conspiracy of the sellers utterly implausible. But the complaint in this case alleges that the four defendants sell 90 percent of U.S. text messaging services, and it would not be difficult for such a small group to agree on

prices and to be able to detect "cheating" (underselling the agreed price by a member of the group) without having to create elaborate mechanisms, such as an exclusive sales agency, that could not escape discovery by the antitrust authorities.

Of note is the allegation in the complaint that the defendants belonged to a trade association and exchanged price information directly at association meetings. This allegation identifies a practice, not illegal in itself, that facilitates price fixing that would be difficult for the authorities to detect. The complaint further alleges that the defendants, along with two other large sellers of text messaging services, constituted and met with each other in an elite "leadership council" within the association—and the leadership council's stated mission was to urge its members to substitute "co-opetition" for competition.

The complaint also alleges that in the face of steeply falling costs, the defendants increased their prices. This is anomalous behavior because falling costs increase a seller's profit margin at the existing price, motivating him, in the absence of agreement, to reduce his price slightly in order to take business from his competitors, and certainly not to increase his price. And there is more: there is an allegation that all at once the defendants changed their pricing structures, which were heterogeneous and complex, to a uniform pricing structure, and then simultaneously jacked up their prices by a third. The change in the industry's pricing structure was so rapid, the complaint suggests, that it could not have been accomplished without agreement on the details of the new

structure, the timing of its adoption, and the specific uniform price increase that would ensue on its adoption.

A footnote in *Twombly* had described the type of evidence that enables parallel conduct to be interpreted as collusive: "Commentators have offered several examples of parallel conduct allegations that would state a [Sherman Act] § 1 claim under this standard . . . [namely,] 'parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties' . . .[;] 'conduct [that] indicates the sort of restricted freedom of action and sense of obligation that one generally associates with agreement.' The parties in this case agree that 'complex and historically unprecedented changes in pricing structure made at the very same time by multiple competitors, and made for no other discernible reason' would support a plausible inference of conspiracy." *Bell Atlantic Corp. v. Twombly*, *supra*, 550 U.S. at 557 n. 4 (citations omitted). That is the kind of "parallel plus" behavior alleged in this case.

What is missing, as the defendants point out, is the smoking gun in a price-fixing case: direct evidence, which would usually take the form of an admission by an employee of one of the conspirators, that officials of the defendants had met and agreed explicitly on the terms of a conspiracy to raise price. The second amended complaint does allege that the defendants "agreed to uniformly charge an unprecedented common per-unit price of ten cents for text messaging services," but

does not allege direct evidence of such an agreement; the allegation is an inference from circumstantial evidence. Direct evidence of conspiracy is not a sine qua non, however. Circumstantial evidence can establish an antitrust conspiracy. *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984); *Miles Distributors, Inc. v. Specialty Construction Brands, Inc.*, 476 F.3d 442, 449 (7th Cir. 2007); *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 661-62 (7th Cir. 2002); *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 771 (8th Cir. 2004); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1028 (10th Cir. 2002); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 465 (3d Cir. 1998); *Johnson v. Hospital Corp. of America*, 95 F.3d 383, 392 (5th Cir. 1996). We need not decide whether the circumstantial evidence that we have summarized is sufficient to *compel* an inference of conspiracy; the case is just at the complaint stage and the test for whether to dismiss a case at that stage turns on the complaint's "plausibility."

The Court said in *Iqbal* that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." 129 S. Ct. at 1949. This is a little unclear because plausibility, probability, and possibility overlap. Probability runs the gamut from a zero likelihood to a certainty. What is impossible has a zero likelihood of occurring and what is plausible has a moderately high likelihood of occurring. The fact that the allegations undergirding a claim could be true is no longer enough to save a complaint from being dismissed; the complaint must establish a nonnegligible probability

No. 10-8037 13

that the claim is valid; but the probability need not be as great as such terms as "preponderance of the evidence" connote.

The plaintiffs have conducted no discovery. Discovery may reveal the smoking gun or bring to light additional circumstantial evidence that further tilts the balance in favor of liability. All that we conclude at this early stage in the litigation is that the district judge was right to rule that the second amended complaint provides a sufficiently plausible case of price fixing to warrant allowing the plaintiffs to proceed to discovery.