IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TEXT MESSAGING ANTITRUST LITIGATION _____ THIS ORDER APPLIES TO: ALL ACTIONS | ) ) ) ) ) ) ) No. 08 C 7082 MDL No. 1997 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case sued AT&T, Sprint, T-Mobile, and Verizon Wireless along with their industry association on behalf of all those who purchased text messages on a pay-per-use basis in the United States. Plaintiffs alleged that defendants conspired to fix prices for these messages in violation of the Sherman Act, 15 U.S.C. § 1. The Court granted summary judgment to defendants in May 2014. *See In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2014 WL 2106727 (N.D. Ill. May 19, 2014). Each defendant has submitted a bill of costs seeking recovery of various expenses they incurred in this litigation, including a significant amount of e-discovery costs. For the following reasons, the Court approves each defendant's bill of costs in part.

### Discussion

**A.    Plaintiffs' request for a stay**

Plaintiffs initially ask the Court to stay any action on defendants' bills of costs pending plaintiffs' appeal of the Court's decision granting summary judgment against them. They say that "rather than determine costs now, the Court's resources will be

best conserved by awaiting the final adjudication of the case following appeal." Pls.' Resp. at 3. Plaintiffs' argument, in other words, is that the Court should not spend time on defendants' bills of costs now because plaintiffs may win on appeal, and the Court's work on the present motions would be for naught. This, however, is the case in any situation in which a party moves for costs after obtaining a judgment that the opposing party appeals.

This is not a good reason to postpone consideration of defendants' motions in this particular case. Defendants contend that prompt action on defendants' bills of costs actually promotes judicial economy, because if plaintiffs appeal the Court's decision, "any subsequent appeal from the order on costs can be consolidated with the appeal on the merits and heard at the same time." Defs.' Reply at 2. This makes more sense. If the Court waits until after plaintiffs' appeal to consider defendants' bills of costs, the sole effect would be to prolong this litigation, which began in 2008, even further. The Court declines to do so. The Court will, however, stay payment of the award of costs until the conclusion of plaintiffs' appeal.

**B. Defendants' requested costs**

Defendants have moved for over $700,000 in costs. Federal Rule of Civil Procedure 54(d) states that "costs—other than attorney's fees—should be allowed to the prevailing party" unless "a federal statute, these rules, or a court order provides otherwise." In that regard, Congress has established that a court or clerk of court "may tax as costs" several different categories of expenses, including "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The categories also

2

include "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." *Id.* § 1920(2). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The Supreme Court, however, recently stated that the "scope of taxable costs" is "narrow," and that such "costs are limited to relatively minor, incidental expenses as is evident from § 1920." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).

Plaintiffs do not dispute that defendants are prevailing parties for purposes of Rule 54(d). They do, however, take issue with many of defendants' specific requests. They argue that defendants have not provided sufficient detail about the copying costs they request; several categories of defendants' e-discovery expenses do not qualify as the cost of "making copies" under section 1920(4); and certain of their costs for transcript-related fees are not permitted under section 1920(2).

**1.  Copying costs**

Plaintiffs first contend that defendants have not sufficiently supported "all of the information required" to support their requests for copying fees. Pls.' Resp. at 6. They argue that each defendant has failed in some way to provide detail about many of the copies for which they now seek costs. These lapses, plaintiffs say, include the failure to describe what was copied, the costs per page, and the number of copies. Defendants respond that they each provide an affidavit affirming that their copying costs were "limited to the costs incurred for the documents actually produced to Plaintiffs." Defs.' Reply at 5. They say: "'what was copied' was each document produced to Plaintiffs

3

(and nothing else)" and that no per-page rate is shown "because ESI services are not priced on that basis." *Id.*

Defendants also cite two Seventh Circuit cases that are pertinent here. In one, the court stated that a prevailing party seeking reimbursement for copying expenses "was not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). The court went on to state that the party instead "was required to provide the best breakdown obtainable from retained records." *Id.* In another case, this one more recent, the plaintiffs argued that the defendants "did not adequately prove what costs they had incurred," but the Seventh Circuit disagreed. *Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698–99 (7th Cir. 2014). The court cited defendants' affidavit attesting that the claimed costs were necessarily incurred and stated that the defendants had no obligation to justify their costs on a document-by-document basis, saying "[t]hat would be preposterous" considering the low cost of copies and the high cost of attorney time. *Id.* The court continued: "No sensible legal system requires parties to waste $60 of lawyers' time to explain spending $6 on making a copy of something." *Id.*

Considering these authorities, as well as the affidavits and invoices defendants have submitted, plaintiffs have not persuasively argued that defendants have failed to adequately substantiate their requested copying costs. It would undoubtedly be onerous for any prevailing party in a litigation as long-running and far-reaching as this one to identify precisely each document it had copied along the way, as well as how many there were and how much each copy cost. The documentation defendants have

4

submitted is sufficient, and the Court declines to reduce the amount defendants have requested for making copies on this basis.

### 2. E-discovery costs

Defendants have requested recovery of a variety of costs that fall under the broad category of e-discovery, or electronically stored information (ESI). The Seventh Circuit has not yet provided detailed guidance on the recoverability of e-discovery expenses on a bill of costs under 28 U.S.C. § 1920. In 2009, the court "brief[ly]" touched on the matter in a case where the (non-prevailing) plaintiff argued that costs "for converting computer data into a readable format in response to plaintiffs' discovery requests" were not proper under the statute. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). In response, the Seventh Circuit stated flatly that "such costs are recoverable under 28 U.S.C. § 1920." *Id.* Several courts in this district have acknowledged that the Seventh Circuit has not otherwise ruled on the extent to which e-discovery costs can be taxed against a non-prevailing party under section 1920. *See, e.g.*, *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, No. 11 C 8449, 2014 WL 2879811, at *5 (N.D. Ill. June 25, 2014); *Massuda v. Panda Express, Inc.*, No. 12 C 9683, 2014 WL 148723, at *4 (N.D. Ill. Jan. 15, 2014); *Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, No. 07 C 623, 2014 WL 125937, at *8 (N.D. Ill. Jan. 14, 2014);

Considering the Seventh Circuit's relative silence on this question, plaintiffs argue that the Court's consideration of which e-discovery costs are compensable should follow the Third Circuit's decision in *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F3d 158 (3d Cir. 2012). There, the court examined the history of section 1920(4), concluding that "only scanning and file format conversion can be considered to be

'making copies.'" *Id.* at 160. The Third Circuit also surveyed several other decisions and concluded that "gathering, preserving, processing, searching, culling, and extracting ESI simply do not amount to 'making copies.'" *Id.* at 171. The awardable costs in *Race Tires* thus included "only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD." *Id.* at 171. These services constituted the "scanning and conversion of native files to the agreed-upon format for production of ESI." *Id.* at 167. All the other e-discovery costs the prevailing party was requesting in the case amounted to steps prior to copying that were not compensable. The court specifically noted that "processing" was not a recoverable cost, even if "essential to make a comprehensive and intelligible production" of ESI, because "that does not mean that the services leading up to the actual production constitute 'making copies.'" *Id.* at 169. The court pointed out that in the time before e-discovery, courts did not award pre-copying costs, such as the expenses of locating, collecting, reviewing, and screening files. Then as now, Congress allowed "only for the taxation of the costs of making copies." *Id.*

Defendants do not respond in their reply brief to plaintiffs' invocation of *Race Tires*. They do not appear to challenge its reasoning, or at least their authorities do not, as several of them cite *Race Tires* approvingly. *See, e.g.*, *Chi. Bd. Options Exch.*, 2014 WL 125937, at *8; *Phillips v. Wellpoint Inc.*, No. 3:10-cv-357, 2013 WL 2147560, at *4 (S.D. Ill. May 16, 2013); *Johnson v. Allstate Ins. Co.*, No. 07-cv-781, 2012 WL 4936598, at *4 (S.D. Ill. Oct. 16, 2012). The Court finds the analysis in *Race Tires* persuasive and will consider the parties' arguments on the taxability of e-discovery costs using that analysis.

### a. T-Mobile

Plaintiffs identify several individual services for which T-Mobile is seeking compensation that plaintiffs argue do not constitute "making copies" under section 1920(4). These services are described as follows in T-Mobile's submission: "quality check production documents"; "analyze and organize ESI in preparation for production"; "conduct analysis, modify and organize ESI materials"; "import documents . . . for use by legal team"; and "prepare . . . document production including images / searchable text." T-Mobile Ex. C at 5, 19, 34, 119–33 (these terms are located several times elsewhere in this exhibit as well). Plaintiffs contend the first four of these tasks were "professional services" that are not taxable as copying costs. As for preparing documents for production including images and searchable text, they argue, citing *Race Tires*, that this task is only a step leading to the making of copies and is thus not recoverable. Defendants respond that these services "were necessary to producing the documents that Plaintiff[s] requested in discovery." Defs.' Reply at 8.

As the Third Circuit reasoned in *Race Tires*, the fact that processing services are claimed to be "essential to make a comprehensive and intelligible production" are not recoverable, because "services leading up to the actual production" do not "constitute 'making copies'" within the meaning of the governing statute. *Race Tires*, 674 F.3d at 169. So too here. Defendants have not persuasively argued that any of these services themselves constituted the production of copies for discovery, stating only that they were "necessary to producing the documents." Defs.' Reply at 8; *see id.* at 9 ("quality control" is "a necessary part of the production process"). These vague pronouncements are insufficient to establish that these costs are recoverable under section 1920(4).

7

Plaintiffs also argue that T-Mobile cannot recover reimbursement for charges relating to insuring that documents have optical character recognition (OCR), which means that their text can be read by a computer (e.g., searched, copied, and pasted). Plaintiffs acknowledge that some courts have permitted recovery of OCR charges, while others have determined they are not part of "making copies" under the statute. Defendants argue in general that OCR costs are recoverable, citing among others a recent case from this district, where the court awarded OCR costs as part of the prevailing party's "conversion costs." *See Chi. Bd. Options Exch.*, 2014 WL 125937, at *9. Yet the court in that case did not distinguish, as the statute requires, between services that actually involve copying and those that merely make a document readable by a computer, which is the function of OCR.

The Third Circuit in *Race Tires* did not explicitly discuss whether OCR costs are recoverable under section 1920(4), although OCR was among the services for which the court did not permit recovery of costs. *See Race Tires*, 674 F.3d at 171 (permitting costs only for scanning of hard copies, conversion of native files to TIFF, and transfer of VHS to DVD). A recent case from this district noted that "[t]here is less uniformity" among courts "about whether OCR costs are recoverable." *Life Plans*, 2014 WL 2879881, at *6. The court in that case went on to deny OCR costs, because the OCR services in the case were applied to documents that had already been converted into a format such as PDF or TIFF, and the prevailing party had "not shown why OCR was necessary to the production of documents in this case." *Id.* at *7. The Court agrees with the reasoning in *Life Plans*. The process of ensuring a document has OCR does not produce a new document, or a copy of a document. Rather, it simply enhances an

already-existing document. Thus this cannot be considered "making copies" under section 1920(4). T-Mobile and the other defendants cannot recover costs associated with OCR in this case.

### b. AT&T

Plaintiffs contend that AT&T is improperly seeking to recover costs for processing files. Defendants label defendants' arguments against AT&T's costs "hyper-technical, if not disingenuous," adding that "the costs [AT&T] sought to recover were limited to costs associated with converting the documents it produced to Plaintiffs in this case." Defs.' Reply at 5. This contention is not responsive to the proposition that it is insufficient for a task merely to be "associated with converting" documents and that the task must itself constitute the copying of documents to be recoverable. Defendants also argue that their processing costs "relate to the final, 'end stage' work necessary to get the files into TIFF form, prepare load files and copy them onto disks." *Id.* at 6 n.1. Again, the fact that a service "relate[s]" to "final, 'end stage' work" is not sufficient to show the cost is recoverable as "making copies" under section 1920(4). Services leading up to the event of TIFF conversion, for example, are just that: one of the opening acts, and not the main event itself. AT&T cannot recover the costs it seeks for data processing, such as "all file native processing." *See, e.g.*, AT&T Ex. A at 2 (entry for May 31, 2011 for "All File Native Processing in anticipation for Production of Documents").

Plaintiffs also contend that AT&T cannot recover reimbursement for "load file creation" and OCR charges, the latter of which the Court has already noted above is not a recoverable cost. As for load file creation, defendants do not specifically defend the preparation of load files as the making of copies, nor do they attempt to explain what a

9

"load file" actually is. After performing rudimentary research, it appears to the Court that the term refers to "a file used to retrieve specific data sets or images located within legal databases through specific retrieval methods implemented in the load file." *Load File*, Techopedia, http://www.techopedia.com/definition/24895/load-file (last visited Aug. 22, 2014); *see also Load File*, Wikipedia, http://en.wikipedia.org/wiki/Load_file (last visited Aug. 22, 2014) ("A load file in the litigation community is commonly referred to as the file used to import data (coded, captured or extracted data from ESI processing) into a database; or the file used to link images."). These definitions suggest that a load file is something that complements the use of legal databases or eases data processing in discovery. If this is the case—and the parties have not provided reason to believe otherwise—the creation of such files in this litigation does not present a recoverable cost. The creation of a load file appears to most comfortably fit in the "data processing" category, which is not the production of a copy. The processing or creation of these files is not a recoverable cost in this litigation.

Furthermore, it is no answer that load files were required by the stipulated discovery order between the parties. The order does not dictate what is and is not recoverable under 28 U.S.C. § 1920. The mere fact that the parties agreed to produce certain types of files does not mean that production is a recoverable cost of a prevailing party. The Court is "limited to shifting only those costs explicitly enumerated in § 1920." *Race Tires*, 674 F.3d at 170–71 (finding it insignificant "that the parties agreed to 'exchange responsive and discoverable ESI,'" because parties can seek protection from burdensome discovery requests under Rule 26(c)).

### c. Verizon

Plaintiffs group their arguments about Verizon's and Sprint's bills of costs into one paragraph, contending that both parties seek non-recoverable electronic data processing expenses. They add that neither party sufficiently describes its "processing charges" as related to actually recoverable e-discovery costs for "making copies." Pls.' Resp. at 12. Defendants respond that Verizon specifically identified and requested compensation only for costs that "were solely related to preparing and producing electronic documents to Plaintiffs." Defs.' Reply at 10. As with the explanation of the other defendants discussed earlier, however, this explanation is insufficient. The fact that a certain process was "related to preparing and producing" e-discovery does not mean that the process itself is compensable as "making copies." *See Race Tires*, 674 F.3d at 169.

Verizon also argues that it is requesting certain costs that were for documents required to be produced under the parties' discovery stipulation. As the Court has already discussed, the production of an item as required by such a stipulation does not mean the production in question is compensable under section 1920(4). Verizon cannot recover costs for the processing of data.

### d. Sprint

Defendants respond to plaintiffs' arguments regarding Sprint by stating that the processing services for which Sprint requests compensation were "required to carry out an electronic production." Defs.' Reply at 7. These costs, defendants say, "were limited to three types of processing": creating TIFF files, creating load files, and "processing of native files for purposes of production." *Id.* Of these three categories,

however, only one is a properly recoverable cost under the statute. In *Race Tires*, the court agreed with the defendant that "converting native files to TIFF" was a recoverable cost because this actually constituted making a copy. *Race Tires*, 674 F.3d at 167. For the same reason, the Court agrees with defendants that converting a file into TIFF format is a recoverable cost. As explained earlier, however, the creation of a load file is not a recoverable cost as it does not constitute "making copies," nor is data processing; without more explanation from defendants, their vague discussion of "processing of native files for purposes of production" appears to fall into that nonrecoverable category. The Court thus concludes that of these three areas, Sprint can recover costs only for the creation of TIFF files.

### e. CTIA

Plaintiffs first challenge CTIA's request for $30,047.82, which it paid LexisNexis "for the Law and Concordance software packages that CTIA obtained specifically and solely so that it could produce its electronic documents to Plaintiffs in this litigation." CTIA-Decl. of Ruth Bahe-Jachna ¶ 8; *see also* CTIA Ex. H. Plaintiffs contend this software was for defendants' attorneys' convenience and was not reasonably necessary for making copies per section 1920(4). CTIA responds by citing a case in which "costs associated with converting computer data into a readable format in response to plaintiffs' discovery rests are recoverable under § 1920." Defs.' Reply at 11 (quoting *Halasa v. ITT Educ. Servs., Inc.*, No. 1:10-cv-437, 2012 WL 639520, at *5 (S.D. Ind. Feb. 27, 2012)). In *Halasa*, however, the court excluded the cost of the database software from the award of costs because the defendants failed to submit enough information about whether the software "was primarily related to counsel's review and

12

selection process." *See id.* Further, purchasing software is an archetypal example of a step toward preparing to copy something, not the cost of the copying itself. CTIA does not explain the situation to be otherwise, and the Court therefore excludes the Concordance software from the award of costs.

Plaintiffs also argue that CTIA cannot recover costs for "tech time," "data capture," "master CD replication," and "OCR." *See* CTIA Ex. D at 7, 12, 14. They argue that these are preparatory steps that occur prior to copying or unrelated to copying altogether and thus not recoverable. CTIA does not answer this argument, and the Court agrees that without more or any explanation, these invoiced costs are not recoverable under section 1920(4).

Finally, plaintiffs contend that CTIA should not be permitted to recover costs for "manila folders," "redwelds," "custom tabs," and "binding." *See, e.g.*, CTIA Ex. A at 2. CTIA responds by saying that it was required to produce documents with these physical attributes because they "were necessary to comply with the requirement of F.R.C.P.34(b)(2)(E) that documents be produced 'as they are kept in the usual course of business.'" Defs.' Reply at 11. Although the Court appreciates the ingenuity of this argument, CTIA has not provided any reason to believe the rule they cite requires documents to be reproduced using precisely the same office supplies that were used in the originals. Regardless, keeping in mind the rule of *Race Tires*, the cited office supply items are not involved in the copying of materials, but rather in their packaging after the copying is already completed. They are not recoverable.

### 3. Transcript fees

Plaintiffs also challenge several of defendants' costs that fall under the broad

13

category of transcript fees. "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" are recoverable. 28 U.S.C. § 1920(2). Plaintiffs contend that several of defendants' requested expenses do not fit this description.

### a. Extra deposition transcripts

Plaintiffs first argue that defendants are not entitled to recover costs for "extra copies of numerous deposition transcripts." Pls.' Resp. at 15. They contend that "the Court should limit defendants' bills of costs to the cost of *one* original and *one* certified copy of each deposition transcript for the entire group." *Id.* Yet defendants, plaintiffs say, ordered nine copies of certain depositions and presumably a similar number for certain other depositions.

Despite plaintiffs' suggestion to the contrary, each defendant is an individual parties that each legitimately incurred its own litigation costs. Each prevailing party in this district appropriately obtained its own transcript of each deposition. The Court determines that each defendant is entitled to recover only the cost of one transcript for each deposition in this case, but only one—anything beyond one per defendant was a matter of convenience, not reasonable necessity.

### b. Video expenses

The law permits a party to recover costs for both a paper transcript and video recording of a deposition; the standard is whether it was reasonably necessary for counsel to obtain both. *See Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). Plaintiffs argue that the witnesses whose depositions were video recorded were defendants' personnel and that there was no reason to believe they

14

would be unavailable at trial, thus it was not reasonably necessary for defendants to pay for a copy of the video recording as well as the paper transcript. In their reply, defendants do not dispute the factual basis for this argument and thus have conceded it. Their only argument is that plaintiffs' counsel, who took the depositions, had them video-recorded. This is insufficient, however, to make it reasonably necessary for defendants to obtain a video copy. They do not contend that they needed the video versions for their motions for summary judgment, and the case never got close enough to trial to make it reasonable to obtain the video recordings for purposes of witness preparation. The Court agrees with plaintiffs that the expenses for the video recordings are not recoverable costs.

c. **Expedited deposition transcripts**

Plaintiffs contend that Sprint cannot recover costs for expediting the production of five deposition transcripts because it does not explain why it needed them. Defendants respond that Sprint's attorney explained in his declaration attached to Sprint's bill of costs that one expedited transcript was necessary to prepare for the deposition of plaintiffs' expert two weeks later. They explain that other expedited transcripts were necessary because the depositions in question came just before deadlines for experts' reports and defendant's summary judgment motion. These explanations are reasonable, and Sprint is entitled to recover these costs.

d. **Electronic copies of depositions; deposition indices**

The expenses defendants incurred for obtaining electronic copies of non-video recorded depositions and word indices are not recoverable to the extent they were separately charged. *See generally Bodum USA, Inc. v. La Cafetiere, Inc.*, No. 07 C

15

6302, 2009 WL 1702808, at *3 (N.D. Ill. June 17, 2009). Defendants must eliminate any separate charges for these items from their request for costs.

### e. Topel deposition invoice by Verizon

Plaintiffs argue Verizon cannot recover costs for the deposition transcript of Robert Topel because Verizon's invoice does not break down the costs of the transcript. Defendants respond that they have obtained an itemized invoice for the transcript and filed a revised bill of costs seeking $758.50 for the transcript rather than $2092. *See* Verizon Rev. Bill of Costs Exs. A–C at 60 (Topel deposition transcript invoice). This reduction and the resulting amount are both reasonable.

### f. Meet-and-confer transcripts

Plaintiffs finally contend that defendants cannot recover costs for copies of transcripts from meet-and-confer discussions between the parties. Defendants respond that plaintiffs asked to have a court reporter present at these meetings and informed defendants that the resulting transcripts would be used in court. Plaintiffs anticipate this argument and state that the fact that plaintiffs requested the reporters be present does not make obtaining transcripts of the meetings reasonable. The governing statute permits the prevailing party to recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Given plaintiffs' representations to defendants about what they planned to do with the transcripts, and the language of the statute permitting recovery for fees for such transcripts, the Court concludes that defendants' costs for these transcripts are recoverable.

**Conclusion**

For the reasons stated above, the Court approves defendants' bills of costs in part. The parties are to confer to attempt to agree upon the specific amounts properly awardable pursuant to this decision and are to file a joint status report in this regard by no later than September 16, 2014. Payment of the award of costs is stayed during the pendency of plaintiffs' appeal of the Court's entry of judgment against them.

  _____
  MATTHEW F. KENNELLY
  United States District Judge

Date: September 2, 2014